# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSA R. R.,**[1] | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| v. | : | **No. 25-782** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| *Defendant.* | : | |

### MEMORANDUM OPINION

**HON. JOSÉ RAÚL ARTEAGA**　　　　　　　　　　　　　　　　　　**December 11, 2025**
**United States Magistrate Judge**[2]

The Commissioner of the Social Security Administration, Frank Bisignano, through an Administrative Law Judge ("ALJ"), denied Rosa R. R.'s application for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383, finding that she was not disabled from July 13, 2021, through January 26, 2025. (Tr. 31[3]). Rosa R. R.,

---

[1] Rosa R. R. is referred to solely by her first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Dec. 3, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 11.)

[3] The parties nitpick each other regarding the format of and pinpoint citations to materials in the administrative record. (*See* ECF 10 at 1-2; ECF 9 at 3 n.3.) Because there are multiple ways to cite to administrative materials docketed in a Social Security appeal,

by and through her undersigned counsel, seeks judicial review of the Commissioner's final administrative decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and asks the Court to vacate the denial of benefits and remand her claims for further proceedings.

After careful review of the record, Rosa R. R.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

I.   BACKGROUND

Rosa R. R. applied for DIB, and SSI in October 2021, initially alleging disability beginning January 28, 2021 based on fibromyalgia, labral tear (right hip), obesity, somatic symptom disorder, major depressive disorder, generalized anxiety disorder, migraines, hallux valgus, gastroesophageal reflux disease, presbyopia, obstructive sleep apnea, hyperlipidemia, and carpal tunnel syndrome. (Tr. 33). At the first hearing on her claims, she amended her alleged onset date to July 13, 2021. (Tr. 75.) She was 45 years old at the time of her alleged disability onset date: a "younger individual" for Social Security purposes. (Tr. 45). *See* 20 C.F.R. § 416.963.[4]

---

drafting and reviewing citations can be bothersome. This nuisance may be exacerbated when parties do not adopt the same format. Nevertheless, in reaching a decision on the merits, common sense should prevail. In this Opinion, citations to materials included in the administrative record use transcript (*i.e.*, "Tr." pagination) except for citations to the underlying administrative decision where the ALJ cited to materials using exhibit numbers and pagination. If a citation creates any confusion regarding the location of a relevant underlying document, context clues can resolve the confusion.

[4] An individual under the age of 50 is defined as a younger person. 20 C.F.R. §§ 404.1563, 416.963. However, "in some circumstances, . . . persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. 20 C.F.R. §§ 404.1563, 416.963.

Rosa R. R.'s claims were initially denied in February 2022 and again on reconsideration in June 2022. (*See* Tr. 166.) She requested an administrative hearing and, after a telephonic hearing in October 2022 (*see* Tr. 70-97), ALJ Corey Ayling issued an unfavorable decision in November 2022. (Tr. 160-82.) Rosa R. R. requested review and the Appeals Council remanded her claims to the ALJ for further consideration in August 2023. (Tr. 189). Specifically, the Appeals Council directed the ALJ "to further evaluate whether" Rosa R. R.'s "carpal tunnel syndrome is a severe or nonsevere medically determinable impairment." (*See* Tr. 30.) The ALJ conducted a second telephone hearing in January 2024. (Tr. 30). Rosa R. R., through a Spanish interpreter, Alex Viadrez, testified at the hearing along with an impartial Vocational Expert ("VE"), Glee Ann L. Keher. (Tr. 30). Rosa R. R. reiterated her request for the amended onset date which was granted. (*See* Tr. 58.)

In January 2024, the ALJ again found that Rosa R. R. was not disabled. (Tr. 30-53). He determined that she has the residual functional capacity[5] ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)" except for working at unprotected heights; near moving mechanical parts; operating a motor vehicle; and without exposure to extreme humidity or wetness. (Tr. 36-37). According to the ALJ, Rosa R. R. does not have the capacity to do assembly line work or other unvarying, fast-paced work. (Tr. 37). Relevant here, the ALJ found that Rosa R. R. had the RFC to respond appropriately to

---

[5] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 416.945(a)(1).

3

supervision, co-workers and usual work situations involving frequent but superficial contacts with others (superficial contacts are those that involve simply exchanging information or taking directions, without any complex teamwork, or other social interaction requiring a code lower than 8 on the people scale of Appendix B to the Dictionary of Occupational Titles, 1991 Revised Edition). (*Id*.)

The ALJ concluded that Rosa R. R.'s RFC precluded her from performing her past relevant work as a machine feeder, welder, inspector, composite electronic assembly job, and material handler. (Tr. 44). Nevertheless, the ALJ found that Rosa R. R. could adjust to alternative work that existed in significant numbers in the national economy. (Tr. 46). The VE had testified that a hypothetical individual like Rosa R. R., given her age, education, work experience, and RFC, "would be able to perform the requirements of representative occupations such as merchandise marker, . . . mail room clerk, . . . and housekeeper . . . ." (Tr. 45). Based on the VE's testimony, the ALJ concluded that Rosa R. R. was "not disabled" because she is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 46). Ultimately, the ALJ made his determination to deny Rosa R. R.'s claim for benefits "[a]fter careful consideration of all the evidence." (Tr. 31.)

Unsatisfied, Rosa R. R. filed a further request for review with the Appeals Council, which was denied. (*See* Tr. 1-5.) Thereafter, she properly filed her appeal of the Commissioner's final decision in in this Court. (ECF 1.)

4

## II.     LEGAL STANDARDS[6]

In determining whether a person is disabled, the Commissioner, through an ALJ, follows a five-step sequential evaluation process under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner determines whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) those determined impairments or the combination of are severe enough to meet or medically equal a listed impairment; (4) has the RFC to perform the requirements of past relevant work; and (5) is able to do any other work considering RFC, age, education, and work experience. *Id.* For steps one through four, the claimant bears the burden of proof. *Smith v. Comm'r of Social Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). It is not until the fifth step that the burden of proof shifts to the Commissioner. *Id.* At this final step, it is up to the Commissioner to show that the claimant can perform other jobs that exist in significant numbers after considering factors such as age, education, prior work experience, and RFC. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). The ALJ—not a treating or examining physician or a state agency consultant—makes the ultimate RFC and disability determination. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2010).

---

[6] The respective regulations governing claims for DIB, which can be found at 20 C.F.R. Part 404, and governing claims for SSI, which can be found at 20 C.F.R. Part 416, "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

On appeal, it is not for the Court to determine whether Rosa R. R. was disabled. The Court's task is limited to considering whether substantial evidence supports the Commissioner's final decision determining that Rosa R. R. was not disabled and whether the ALJ correctly applied relevant law. *See* 42 U.S.C. § 405(g). The Court reviews the Commissioner's findings of fact in the context of the existing administrative record to find whether "substantial evidence" exists to support them. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C. § 405(g). "Substantial evidence" is only "more than a mere scintilla[,]" and is not a high evidentiary bar. *Biestek*, 587 U.S. at 102, 103 (2019). In this context, it means relevant, supporting evidence that would be adequate to cause a reasonable mind to accept a conclusion. *Id.* at 103. When the ALJ's findings are supported by substantial evidence, they are conclusive and binding. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Therefore, "Courts are not permitted to re-weigh the evidence or impose their own factual determinations" and may not "substitute [their] own judgment for that of the fact finder." *Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Rosa R. R. bears the burden to explain how any "error to which she points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

6

## III. DISCUSSION

Rosa R. R. argues that "the Commissioner erred as a matter of law by failing to build an accurate and logical bridge between the medical opinions and the residual functional capacity." (ECF 8 at ECF p. 10 (capitalization omitted).) She complains that the ALJ's mental RFC determination was less restrictive than was required given the limitations assessed by two state agency psychological consultants—Davis Biscardi, Ph.D., and Ray Conroe, Ph.D.—each of whom opined that she is limited to brief/superficial interactions with others in the workplace. (*Id.* at 10-16.) She argues that because the ALJ found that their opinions were persuasive, he needed to do more to explain why he determined that she had the RFC to respond to work situations involving "frequent but superficial" contacts with others. (*Id.* at 12; *see* Tr. 37.) The Commissioner responds that the ALJ "logically assessed" the impact of Rosa R. R.'s mental distress on her RFC "based on the record as a whole," noting that, "at no point in the lengthy duration of [her] claim for benefits or even when asked directly by the ALJ about why she could not work, did [Rosa R. R.] even mention problems, whether slight or debilitating, with interacting with others." (ECF 9 at 9.) Upon review, the ALJ's consideration of the opinions of Dr. Biscardi and Dr. Conroe does not require remand because he adequately explained his decision and substantial evidence supports it.

Rosa R. R. asks the Court to find that the ALJ was required to establish a "logical bridge" between her RFC and the state agency psychological consultants' opinions based on her citation to a non-precedential Report and Recommendation from the Middle District of Pennsylvania's decision in *Beiersdorf v. Saul.* No. 19-1582, 2020 WL 8259116, at

\*5 (M.D. Pa. Dec. 14, 2020) (approved and adopted by order without opinion, No. 19-1582, at ECF 15 (M.D. Pa. Dec. 30, 2020)). (*See* ECF 8 at 10.) *Beiersdorf* imports the logical bridge" standard from a case decided in the Northern District of Ohio. 2020 WL 8259116, at \*5 (citing *Falkosky v. Comm'r of Soc. Sec.*, No. 19-2632, 2020 WL 5423967, at \*8 (N.D. Oh. Sept. 10, 2020)). Nevertheless, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted); *see also United States v. Maury*, 695 F.3d 227, 259 n.2 (3d Cir. 2012) ("Of course, the decisions of other circuits, while persuasive, are not binding on the district courts in this Circuit."). Rosa R. R. cites to no binding precedent from the Supreme Court or the Third Circuit which uses the "logical bridge" test as the burden of articulation in a Social Security appeal.[7]

The Social Security Act requires the ALJ to state a reason or reasons upon which the decision was based. 42 U.S.C. § 405(b)(1). As the Third Circuit has held, courts defer to the ALJ's assessment of the evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak*, 777 F.3d at 612 (citation omitted). The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review" and ALJs are not required "to use particular language or adhere to a particular format in conducting [their] analysis." *Jones v. Barnhart*,

---

[7] Indeed, the Court's November 26, 2025 Westlaw and Lexis database searches for *binding* decisions within the Third Circuit using the phrase "logical bridge" revealed that there are none.

8

364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).  To decide whether the record was sufficiently developed, the Court reads the ALJ's decision "as a whole."  *Jones*, 364 F.3d at 505.

"A reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citation modified).  ALJs need to "explain only the dispositive reasons for their decisions, not everything else that they considered."  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. Sept. 18, 2024).  An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors.  *Id.*  "While form is not irrelevant in the scripted analytical steps called for when determining if someone is disabled," an ALJ need not "chant every magic word correctly" to avoid the remand of "an otherwise thorough and well-reasoned opinion . . . ."  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 200 (3d Cir. 2019).

When ALJs weigh medical opinions, "all they must *explain* are the reasons for their decisions." *Zaborowski*, 115 F.4th at 638 (emphasis in original). Under the applicable regulations for claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.416.920c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). ALJs must "articulate how [they] considered the medical opinions" and "how persuasive" the opinions are. 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The governing regulations explain that

9

"[b]ecause many claims have voluminous records containing many types of evidence from different sources, it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [they] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a claimant's] case record." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). An ALJ is "not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

When assessing whether a medical source's opinion is persuasive, supportability and consistency are the "most important" factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 (W.D. Pa. Dec. 4, 2023) (citation modified). An ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical opinion considered in reaching a determination. *Zaborowski*, 115 F.4th at 639. Moreover, an ALJ need not "always explain[ ] all the factors." *Id.* An ALJ will, nevertheless, consider other factors that tend to support or contradict any medical opinion or prior administrative finding including the provider's relationship with the claimant (its purpose, extent, and duration), whether the provider only reviews evidence in a claimant's folder or examines the claimant (and, if so, how often). 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). The ALJ will also consider how any medical source's specialization bears on their opinion and any "other factors that tend to support or

10

contradict [their] medical opinion or prior administrative finding." 20 C.F.R. §§ 404.1520c(c)(4)-(5), 416.920c(c)(4)-(5).

Here, in assessing Rosa R. R.'s RFC, the ALJ explained that her allegations of difficulty interacting with others [are] not proportionate with her social history." (Tr. 41.) Specifically, he explained that although "she reported that she has difficulty interacting with others, she indicated that she does not have problems getting along with authority figures or ever being fired from a job because of problems getting along with people." (*Id.* (*citing* Ex. 10E).) The ALJ's decision noted that during "the most recent hearing," Rosa R. R. "stated she continues to work part-time at Pizza Ranch" where she was "on her feet for the entire shift, which is 3.5 to 4 hours per day and 18 to 20 hours per week." (Tr. 38). He explained that Rosa R. R. "revealed to her treatment provider that things are going well with her job and she revealed that she enjoys the interaction with others." (Tr. 41 (*citing* Ex. 8F/9).) He deemed this evidence "not consistent with her allegations of profound difficulties interacting with others." (*Id.*) He noted that Rosa R. R. had "revealed that she has a good relationship with her daughters, family, and boyfriend." (*Id.* (citing Ex. 1F/7).) He found there was "no evidence that she was hostile or combative towards her treatment providers. She was described as calm and/or cooperative." (*Id.* (*citing* Ex. 2F/12, 40, 49, 89; 5F/13; 12F/8).)

Rosa R. R. does not specifically reference or contradict any of these findings in her Brief or her Reply. (*See* ECF 8, 10.) Instead, she focuses in on what are, in her view, "Drs. Biscardi and Conroe's *uncontroverted* evaluations of [her] social interaction limitations . . . ." (ECF 8 at 11 (emphasis added).) She explains that both state agency

11

consultants assessed her to be moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and in her ability to get along with coworkers or peers without distracting them or exhibiting personal extremes. (*Id.*) And she explains that both opined that she retains the capacity to "interact *briefly/superficially* with others." (*Id.* at 11-12 (emphasis added).) As Rosa R. R. notes, the ALJ found that their determinations were "consistent with the evidence available and supported by their review of the record" and he found their "prior administrative findings to be persuasive." (Tr. 42.) Rosa R. R. effectively argues that, because the ALJ found that Dr. Biscardi and Dr. Conroe's opinions were persuasive, his RFC determination was required to include a limitation to *brief* interactions with others and/or that remand is required for the ALJ to specifically explain why he instead found that she has the RFC to "respond appropriately to supervision, co-workers, and usual work situations involving *frequent but superficial contacts* with others." (ECF 8 at 12 (emphasis in original) (citing Tr. 37).) Her argument is unpersuasive.

The controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c). Ultimately, an ALJ determines functional capacity from "all of a claimant's *credibly established* limitations." *Rutherford*, 399 F.3d at 554 (emphasis in original). When an alleged limitation is "supported by medical evidence, but is opposed by other evidence in the record," the ALJ may choose to discredit it. *Zirnsak*, 777 F.3d at 615. An ALJ is not required to adopt "all of" an opinion solely because the ALJ finds the

12

opinion "as a whole persuasive . . . ." *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014).

Here, the ALJ appropriately relied on multiple sources in reaching his RFC finding and specifically explained that he considered Rosa R. R.'s "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."  (Tr. 37.)  Although the ALJ's decision did not reference either Dr. Biscardi or Dr. Conroe by name, he did consider their opinions. Citing to their determinations along with those from other State agency psychological consultants, the ALJ noted, among other things, that "[t]he State agency's psychological consultants determined that [Rosa R. R.] had no limitation in the domain of understanding, remembering, or applying information with moderate limitations in the remaining domains."  (Tr. 42 (citing, *inter alia*, Ex. 1A (Dr. Biscardi's opinion) and Ex. 5A (Dr. Conroe's opinion).)  In addition to the opinions from Dr. Biscardi and Dr. Conroe, the ALJ considered an opinion from Robert Van Noord, Ph.D., who opined that Rosa R. R. could "cope adaptively with typical workplace stressors, per se" and who reported no evident concerns pertaining to her "ability to interact appropriately with others within a work context." (Tr. 43 (citing Ex. 10F).) The ALJ found that Dr. Noord's opinion was "somewhat persuasive to the extent it supports that the claimant is able to perform simple work and tolerate limited in[ter]action with others." (Tr. 44.) Ultimately, after considering all evidence of record, the ALJ explained that his RFC assessment took "into consideration the combined limiting effects of [Rosa R. R.'s] somatic symptoms disorder, anxiety, and depression." (Tr. 44.) He wrote that "[d]ue to mood disturbances,

13

anxiousness, and somatic symptoms, the record supports simple work, simple instructions, *limited interaction with others* and limited changes in the work setting." (*Id.* (emphasis added).) The ALJ accounted for Rosa R. R.'s acknowledged limitation in interacting with others by limiting her to "usual work situations involving contacts with others "that involve simply exchanging information or taking directions, without any complex teamwork or other social interaction . . . ." (Tr. 37.)

To support her argument that the ALJ erred when he elected a "frequent but superficial" limitation for her RFC instead of a limitation to interacting with coworkers "briefly/superficially," Rosa R. R. relies on *Tiffany B. v. Kijakazi*, No. 22-1227, 2023 WL 3958424, at *2 (D. Minn. May 22, 2023) (approved and adopted by No. 22-1227, 2023 WL 3955348 (D. Minn. June 12, 2023)).[8] There, two state agency psychological reports stated that the plaintiff could only tolerate "brief and superficial" integrations. 2023 WL 3958424, at *2. The ALJ, however, found that the plaintiff "could tolerate 'occasional' interactions with supervisors, coworkers, and the public." *Id.* On appeal to the District of Minnesota, the plaintiff argued that the ALJ had "unreasonably ignored the state experts' prior administrative medical findings about the limitations on the quality of her workplace interactions, and erred by not including those limitations when considering [her] RFC." *Id.* The ALJ had found that the prior administrative findings were "partially persuasive, determining that [the p]laintiff was *more* limited in managing herself than the

---

[8] As explained above, while decisions from the District of Minnesota may be persuasive, they do not bind this Court.

experts opined." *Id.* at *3. The court held that "occasional" and "brief and superficial" were "not synonymous" and that the ALJ had erred by substituting the terms "without any explanation . . . ." *Id.* at *4. The Court also held that "[f]inding error in the ALJ's partial rejection of expert prior administrative medical findings d[id] not end the matter" because it was the plaintiff's burden to show that the error was harmful," *i.e.*, that the ALJ would have decided differently if the error had not occurred. *Id.* at *4 (citation omitted). In *Tiffany B.*, that was "a close question." *Id.* at *5.  Ultimately, the Court held that it could not find the error was not harmless at Step 5 of the analysis because the record was incomplete, so it remanded for further consideration. *Id.* at *5.  Here, in contrast, the ALJ offered a thorough explanation for his assessment of Rosa R. R.'s social limitations and their impact on her RFC.  She points to nothing in the record that the ALJ failed to address that would demonstrate why her case presents a similarly close question that requires remand or reversal of the Commissioner's determination.  Rosa R. R. bears the burden to explain how any "error to which [s]he points could have made any difference . . . ." Shinseki, 556 U.S. at 409. Her citation to *Tiffany B.*, without more, is not enough.

Meanwhile, the Commissioner argues—correctly—that the circumstances here are more analogous to those in *Julie L.P. v. O'Malley*, a more recent report and recommendation which declined to follow *Tiffany B.* (ECF 9 at 11.)  *See Julie L.P.*, No. 23-2980, 2024 WL 4973207 (D. Minn. Oct. 18, 2024) (approved and adopted sub nom. *Julie P. v. O'Malley*, No. 23-2980, 2024 WL 4880375 (D. Minn. Nov. 25, 2024)). There, the magistrate judge was not persuaded that *Tiffany B.* supported the plaintiff's argument that the ALJ's use of different terminology from the agency experts in her RFC meant that

15

the RFC was flawed. *Id.* at *10-11. The report and recommendation explained that "the ALJ's reference to no complex teamwork or other social interaction requiring a code lower than '8' on the people scale [did] not conflict with" the state agency psychologists' opinions that Julie L.P. was limited to brief and superficial contact. *Id.* at *12. Adopting the report and recommendation in *Julie P.*, the Court explained that while it was "true" that the ALJ "did not adopt the precise terminology used by the psychological consultants," remand was not required because "the ALJ adequately incorporated the consultants' proposed limitations and was not required to adopt the consultants' exact terminology." *Julie P.* 2024 WL 4880375, at *2. Both the report and recommendation and the decision approving and adopting it relied on *Lane v. O'Malley*, an Eighth Circuit decision declining to grant a plaintiff's appeal based on an ALJ's findings regarding the plaintiff's social interaction limitations. No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024); *see Julie P.*, *2024 WL 4880375*, at *2; *Julie L.P.*, 2024 WL 4973207, at *11-12. In *Lane*, the Eighth Circuit found there was no reason to "nitpick" an ALJ's "well-reasoned decision" based on a "manufactured inconsistency" between the ALJ's reference to "occasional interactions" and the persuasive opinion of two psychologists that the plaintiff "could have 'superficial' interactions." 2024 WL 302395, at *1. The difference in terms alone did not mean the ALJ's decision lacked substantial evidence. *Id.*

Rosa R. R. asks this Court to remand based on a similar manufactured inconsistency: a distinction between superficial interactions with others that are brief (whether frequent or rare) as compared to superficial interactions which are frequent (whether brief or extended). The ALJ, like the state agency psychologists, acknowledged

16

that Rosa R. R. has limitations in social interactions. (Tr. 37, 41, 104, 116, 128, 141). Dr. Conroe and Dr. Biscardi issued verbatim opinions that Rosa R. R. has the capacity to "understand, remember, carry out and sustain performance of 1-3 step tasks, complete a normal workday, interact briefly/superficially with coworkers/supervisors with limited public contact, and adapt to changes/stressors associated with simple routine competitive work activities." (Tr. 105, 117, 129, 142). Considering their opinions in the context of the entire record, the ALJ found that Rosa R. R. "can respond appropriately to supervision, co-workers and usual work situations involving frequent but superficial contacts with others." (Tr. 37). He explained that the record supported Rosa R. R.'s "at least superficial contact with others" and "limited interaction with others . . . ." (Tr. 41, 44). The ALJ was not limited to considering only Dr. Conroe's and Dr. Biscardi's assessments in making an RFC determination that retained their suggested limitation to superficial contacts but allowing for those contacts to be frequent. His failure to parrot the state agency psychologists' findings does not require reversal because there is substantial evidence in the record to support the ALJ's ultimate determination. *Cf. Julie P.*, 2024 WL 4880375, at *2 (holding no remand was required where, "instead of parroting the consultants' language," the ALJ's RFC "merely expounded on" the definition of superficial) (internal quotations omitted).

In addition to what Dr. Conroe and Dr. Biscardi had to offer, the ALJ considered reports that contradicted Rosa R. R.'s claims that she has difficult interacting with others. (Tr. 41). According to progress notes from a therapy session, Rosa R. R. indicated that "things [were] going well with her job, and . . . that she enjoys the interaction with

17

others." (Tr. 1089.) She was reported to have a good relationship with her daughters, a very close relationship with her siblings, especially with her sister whom she talks to often, talks weekly with her parents, and is in a committed relationship with a man. (Tr. 679.) She reported video chatting with others twice a week. (Tr. 589.) Although she stated that she has no friends (*id.*), other evidence supports her ability to have at least superficial contact with others. Rosa R. R.'s diagnostic assessment shows that she had no difficulty joining in community activities, dealing with people she does not know, or maintaining friendship. (Tr. 683.) She had mild difficulty concentrating on doing something for ten minutes and learning new tasks. (*Id.*) She was able to food shop on a regular basis. (Tr. 589.) Her interviewers all indicated that her demeanor, responses, eye contact, and speech were within normal limits. (Tr. 680, 746, 756, 759, 1157, 1160.)

In addition, the ALJ offered hypotheticals to the VE about an individual with a limitation to "frequent but superficial contacts" (Tr. 65), consistent with his step-five obligation to "accurately convey" all of Rosa R. R.'s "credibly established limitations" to the VE. *Rutherford*, 399 F.3d at 554. The ALJ defined "superficial" contacts for the VE as any "contacts that involve simply exchanging information or taking directions without any complex teamwork or other social interaction requiring a code lower than eight on the people scale of Appendix B to the DOT 1991 revised edition." (Tr. 65.) A review of cases involving an ALJ's assessment of "superficial" contacts limitations suggests that substituting "brief" for "frequent" in the hypothetical would not have had a meaningful impact on the final analysis. *See Joseph J. B. v. Comm'r of Soc. Sec.*, No. 23- 652, 2024 WL 4217371, at *14 (N.D.N.Y. Aug. 29, 2024) ("Positions categorized as involving level 8

interaction can be performed by individuals who require *limited* interaction with supervisors and others.") (emphasis added); *Ammie Y. v. Kijakazi*, No. 22- 126, 2023 WL 6367659, at *1 (E.D. Wash. Sept. 29, 2023) ("Courts have determined that level 8 interaction is compatible with an RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public.") (citations omitted); *Scott C. v. Comm'r of Soc. Sec.*, No. 2:20-CV-00109, 2021 WL 2682276, at *5 (D. Vt. June 30, 2021) (same); *Alie v. Berryhill*, No. 16-1353, 2017 WL 2572287, *16 (E.D. Mo. June 14, 2017) ("Level 8 interaction is compatible with a[n] RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public.") (citation omitted); *Connor v. Colvin*, No. 13-219, 2014 WL 3533466, at *4 (D. Me. July 16, 2014) (construing a rating of "not significant" for the category "People: 8–Taking Instructions–Helping" as "consistent with limitations to occasional, *brief*, and superficial contact with coworkers and supervisors") (emphasis added, citations omitted). Notably, when given an opportunity to pose further questions to the VE about the ALJ's hypotheticals, Rosa R. R.'s attorney had no questions about whether a restriction to "brief" contacts would change the analysis. (Tr. 67-68 (only asking a question about whether different jobs would be available if the hypothetical individual were limited to "occasional" handling and fingering, with "nothing further").).

Remand for further consideration of whether the ALJ should have adopted a limitation to brief superficial contacts instead of frequent but superficial contacts is not required. It would not change the outcome of Rosa R. R.'s benefits application. *See Rutherford*, 399 F.3d at 553. Appropriately considering the record as a whole, the ALJ's

ultimate RFC determination is based on substantial evidence—enough evidence to be "adequate to cause a reasonable mind to accept" the conclusion that Rosa R. R. can handle usual work situations involving frequent but superficial contacts with others. *Biestek*, 587 U.S. at 103.

## IV. CONCLUSION

Substantial evidence is a "low threshold," *Zaborowski*, 115 F. 4th at 640, and upon review of the record, remand is not required based on the ALJ's determination that Rosa R. R. has the RFC to respond appropriately to work situations involving frequent but superficial contacts with others. Rosa R. R.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

An appropriate Order follows.